UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **LORRI LANGFORD**, individually and on behalf of a class of persons similarly situated,     Plaintiff | : : : : |
| v. | :    C.A. No. 1: 16-cv-00209-M-LDA : |
| **BUFFALO WILD WINGS INTERNATIONAL, INC., BUFFALO WILD WINGS, INC.** and **BLAZIN WINGS, INC.** d/b/a **BUFFALO WILD WINGS, JOHN DOE COMPANIES,** 1 through 10, inclusive,     Defendants | : : : : : : |

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT OF COLLECTIVE ACTION

### I. INTRODUCTION

The Named Plaintiff,[1] Lorri Langford, submits that the parties have reached a proposed settlement of this matter. This motion seeks certification of the collective class and approval of a settlement which will provide financial benefit to employees of Buffalo Wild Wings International, Inc., Buffalo Wild Wings, Inc., Blazin Wings, Inc. d/b/a Buffalo Wild Wings and/or John Doe Companies, 1 through 10, inclusive (collectively referred to hereinafter as "Defendants" or "BWW"), who were not properly compensated for all hours worked. The proposed settlement creates a common fund of $70,000.00 and satisfies the criteria for approval of a collective action settlement pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA").

All Plaintiffs for whom the parties have a deliverable address will receive a cash payment from the common fund. They do not need to submit a claim to receive an award. The common fund also will be used to pay: (1) all costs associated with administration of the settlement and (2) an

---

[1] Words or phrases that are capitalized in this Memorandum are defined under the Settlement Agreement. As such, those definitions are incorporated herein.

individual award to the Named Plaintiff in the amount of $5,000.00 as approved by the Court. The Plaintiff's counsel's requested attorneys' fees and litigation expenses, the total amount of $25,717.69, will be paid separate and apart from the common fund. Accordingly, the Named Plaintiff seeks an order from this Honorable Court: (1) granting approval of the proposed settlement; (2) certify for settlement purposes the settlement class; (4) approving the incentive award to the Named Plaintiff in this matter; (5) appointing Formisano & Co., P.C. as settlement class counsel; (6) approving the form, content and method of distribution of the Notice; (7) approving the attorney's fees and costs; and, (8) approving the appointment of Rust Consulting, Inc. as the third-party settlement administrator.

## II. MATERIAL FACTS & PROCEDURAL BACKGROUND

### A. Plaintiff's Allegations

On May 10, 2016, the Named Plaintiff, Lorri Langford, filed a collective and class action complaint in this Court alleging claims under the FLSA as well as the Rhode Island Minimum Wage Act, R.I.G.L., § 28-12-1, *et seq.* ("RIMWA"). In her lawsuit, the Named Plaintiff has asserted that she was formerly employed at Defendants, which owned and operated two (2) restaurant locations in Rhode Island. The Named Plaintiff has alleged that the Defendants failed to pay her and other tipped employees the full minimum wage for all hours worked as required by the FLSA and the RIMWA. Specifically, the Named Plaintiff has claimed that the Defendants unlawfully took a "tip credit" and paid the Named Plaintiff and other tipped employees a reduced minimum wage for non-tipped duties commonly referred to as "side work" or "closing work." The Defendants deny any wrongdoing or violation of the FLSA or the RIMWA and further contend that all Rhode Island tipped employees, including the Named Plaintiff, were lawfully compensated.

On October 24, 2016, this Court stayed this matter pending the determination of liability in a related lawsuit, Alisha Robbins, et al. v. Blazin Wings, Inc. d/b/a Buffalo Wild Wings, C.A. No.:

15-06340, filed in the U.S. District Court for the Western District of New York (the "Robbins Action").

### B. The Robbins Action

The Robbins Action was a nationwide collective/class action, which asserted similar wage and hour claims based on the alleged improper reliance on the "tip credit" as asserted by the Named Plaintiff in this matter. Both cases also involve the same defendant, Blazin Wings, Inc.

In September, 2018, the parties in the Robbins Action reached a settlement on a class-wide basis. The settlement was approved by the Robbins court on May 6, 2019. The administration of the settlement was completed in June, 2020. As part of the Robbins Action settlement administration process, a total of sixty-two (62) Rhode Island employees opted into the Robbins Action and participated and received settlement monies in the Robbins Action. There remain approximately two-hundred forty-five (245) Rhode Island employees as part of the putative class in this matter.

### C. Investigation and Settlement Negotiations

The Named Plaintiff's counsel conducted a thorough investigation of the Named Plaintiff's potential claims and Defendants' defenses in this matter. The Complaint was filed by the Named Plaintiff on May 10, 2016 alleging that the Defendants violated the FLSA and RIMWA by unlawfully taking a tip credits while requiring them and other tipped employees at Defendants two (2) Rhode Island restaurants to perform non-tipped work, including side work and closing work.

As the settlement process in the Robbins Action neared completion, the Defendants had a better understanding of the number of members in the putative class and the amount of the wage claim attributable to each putative class member. As such, beginning in May, 2020, the Defendants provided the Named Plaintiff's counsel with information, data, and documents relevant to the

claims in this case. The materials disclosed by the Defendants included the total number of putative class members, the putative class members' employee numbers, and the amount of purported unauthorized tip credits taken by the Defendants for the period of September 1, 2013 until June 30, 2020. The Defendants also provided the Named Plaintiff's counsel with paycheck data, time entry data, customer check data for first checks opened and last checks closed for the Plaintiff for the period of her employment (June 10, 2015 until April 8, 2016). The Named Plaintiff and the Named Plaintiff's counsel reviewed and discussed these materials.

After reviewing the materials, the parties engaged in a good faith, arms-length negotiation to resolve this litigation. This Court permitted this matter to be stayed to allow for the on-going settlement negotiations. Following extensive negotiations, the Named Plaintiff and the Defendants reached a tentative settlement agreement on September 18, 2020.

### III. TERMS OF THE PROPOSED SETTLEMENT

The complete details of the Settlement are contained in the Settlement Agreement signed by the parties and attached as Exhibit 1 to the Declaration of Michael D. Pushee, Esq. ("Pushee Decl."). The Settlement Agreement is between the Defendants and the Named Plaintiff. The following summarizes the Settlement Agreement's terms.

#### A. Certification for Settlement Purposes

The parties, through their respective counsel, have conferred in good faith regarding the issue of conditional certification under 29 U.S.C. § 216(b). In order to avoid unnecessary expense and in the interests of judicial economy, the Defendants have agreed to stipulate to certification of the collective as set forth herein. See Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1259 (11th Cir. 2008) (explaining certification process employed in Fair Labor Standards Act cases and noting

the standard for conditional certification is lenient, requiring merely a showing that similarly-situated individuals exist who should be informed of the lawsuit).

The collective action shall consist of the following individuals to be certified for settlement purposes and receive notice of this lawsuit pursuant to 29 U.S.C. § 216(b): all individual Tipped Workers employed by the Defendants at Defendants' two (2) Rhode Island restaurant locations, between September 1, 2013 until June 30, 2020, who were paid sub-minimum, tip-credit wages.

### B. The Settlement Class Plaintiffs

The Settlement Class Plaintiffs (the "Plaintiffs") shall consist of the Named Plaintiff and Tipped Workers, who affirmatively opt in to the Settlement by cashing a settlement award check.

If a person is a Plaintiff but his or her name is not provided to the Settlement Administrator, that individual shall not be deemed to be a member of the Settlement Class for purposes of the settlement release.

In order to receive a settlement payment under the Settlement, the Plaintiffs do not need to submit a claim form. The Plaintiffs need only cash settlement checks to opt-in. In addition, any Plaintiff whose notice is returned undeliverable with no forwarding address, after compliance with the Settlement Administrator's mailing requirements, will be excluded from the Settlement Class, will not be bound by the Settlement, and will not receive any Settlement Award.

### C. Relief to the Settlement Class

The Settlement provides that Defendants will pay $70,000.00 (the "Gross Settlement Amount") in settlement of the class claims. Pushee Decl. ¶ 13. Payment of the court-approved Incentive Award to the Named Plaintiff and the fees and expenses of the Settlement Administrator will be deducted from the Gross Settlement Amount. Id. The resulting Net Settlement Amount will be distributed to participating Plaintiffs.

All Plaintiffs will be paid a portion of the Net Settlement Amount pursuant to an allocation formula based on their actual individual minimum wages owed. For each Plaintiff, his or her owed wages will be calculated by subtracting the amount of wages paid at the tip-credit minimum wage from the amount of wages that would have been earned if that Plaintiff was paid the applicable minimum wage for all Non-Tipped Hours worked between May 10, 2013 and June 30, 2020 according to Defendants' Pay Data. Id. at ¶ 17.

Non-Tipped Hours Worked for each Plaintiff is calculated by subtracting the total tipped hours worked on a particular day (time entry of first customer check opened until time entry for last customer check closed with adjustments for breaks) from the total hours worked that particular day (first clock-in until last clock-out entry) according to Defendants' Pay Data. Id.

All Plaintiffs will be computed to be owed an amount in Liquidated Damages that equals their amount of Owed Minimum Wages. All Plaintiffs' Individual Owed Minimum Wages and Liquidated Damages will be summed to calculate each Plaintiff's Individual Amount Owed. All Plaintiffs' Individual Amounts Owed will be summed to calculate Total Owed to all Plaintiffs, and the Plaintiffs' Counsel will then divide each Plaintiff's Individual Amount Owed by the Total Owed to all Plaintiffs to calculate each Plaintiff's Portion of the Net Settlement Fund. Finally, the Plaintiffs' Counsel will multiply each Plaintiff's Portion of the Net Settlement Fund by the Net Settlement Fund to calculate their individual Settlement Award. If a Plaintiff's Settlement Award is less than $25.00, the Plaintiff's Settlement Award will be increased to the Minimum Settlement Award of $25.00. Id.

Within ten (10) business days after the Approval Order, the Defendants will deposit the Gross Settlement Amount into a Qualified Settlement Fund established by the Settlement Administrator. Id. at ¶ 18.

The Settlement Administrator will make all legally mandated payroll deductions prior to distributing the settlement payments to all Plaintiffs.

### D. Notice Process & Reversion

If the Settlement Agreement is approved, within 10 days of approval, the Defendants will provide Plaintiff's Counsel and the Settlement Administrator contact information, in electronic form, for all the Plaintiffs. Id. at ¶ 15.

After performing a skip trace to obtain the most current address for each Plaintiff, the Settlement Administrator will send Settlement Notices and Settlement Checks by First Class U.S. mail to the Plaintiffs. The Plaintiffs will have until the end of the Acceptance Period (the 150-day period following the mailing or re-mailing of a Settlement Check), to cash their Settlement Checks. The end of the Acceptance Period will be clearly identified on the Settlement Notices and the Settlement Checks. Id.

Any portion of the Net Settlement Fund that remains unclaimed by the Plaintiffs who do not timely endorse and cash their Settlement Checks by the end of the Acceptance Period, or that otherwise remain in the Qualified Settlement Fund under the control of the Settlement Administrator upon final accounting of the settlement funds, shall be returned by the Settlement Administrator to Defendants' counsel. Id. at ¶ 16.

### E. Releases

Only those individuals who cash their Settlement Checks will release any claims. Id. at ¶ 19; see also Settlement Agreement, ¶ 4.1(A). The Settlement Agreement provides that every Plaintiff who cashes a Settlement Check will release the Defendants and the Releasees from any claims asserted in the Class and Collective Action Complaint, including any claims for alleged failure to pay the minimum wage under the FLSA and the RIMWA; and any claim for liquidated or multiple

7

damages, penalties, restitution, interest, attorneys' fees or costs, declaratory relief, equitable relief, or injunctive relief for any such claims, within the time periods identified in Section 4.1(B) of the Settlement Agreement. Pushee Decl. ¶ 19.

### F. Attorneys' Fees and Costs

With Court approval, the Plaintiffs' Counsel will receive $25,000.00 as attorneys' fees, plus reimbursement of reasonable out-of-pocket costs incurred in the litigation of this action in the amount of $717.69. Id. at ¶ 21.

### G. Incentive Award

In addition to her payment under the allocation formula, the Named Plaintiff seeks Court approval for an Incentive Award from the Gross Settlement Amount for services she rendered to the Plaintiffs in the amount of $5,000.00. Id. at ¶¶ 28-29.

### H. Settlement Administrator

The Parties have retained Rust Consulting, Inc., a third-party class action claims administrator, to serve as the Settlement Administrator. The Settlement Administrator's costs and expenses shall be paid from the Gross Settlement Amount. Id. at ¶ 30.

## IV. ARGUMENT

### A. Standard for Settlement Approval Procedure under the FLSA

The FLSA provides that "[a]ny employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee ... affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be... ." 29 U.S.C. § 216(b). The FLSA's provisions are mandatory and, generally, are not subject to bargaining, waiver, or modification by contract or private settlement. Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 706 (1945). The two limited circumstances in which FLSA claims may be compromised are (1) when the Secretary of

Labor supervises the settlement pursuant to 29 U.S.C. § 216(c) or (2) when a court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b). Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div., 679 F.2d 1350, 1353 (11th Cir. 1982).

A one-step approval process is appropriate in FLSA settlements that do not include proposed Fed. R. Civ. P 23 class releases. Lauture v. A.C. Moore Arts & Crafts, Inc., , 2017 WL 6460244, at *1 (D. Mass. June 8, 2017) citing e.g, Koszyk v. Country Fin. a/k/a CC Servs., Inc., 2016 WL 5109196, at *1 (N.D. Ill. Sept. 16, 2016); Bozak v. Fedex Ground Package Sys., Inc., 2014 WL 3778211, at *2 (D. Conn. July 31, 2014); Campbell v. Advantage Sales & Mktg. LLC, , 2012 WL 1424417, at *1 (S.D. Ind. Apr. 24, 2012); Powell v. Lakeside Behavioral Healthcare, Inc., , 2011 WL 5855516, at *1 (M.D. Fla. Nov. 22, 2011). "Unlike Federal Rules of Civil Procedure Rule 23 class actions, FLSA collective actions require similarly situated employees to affirmatively opt-in [in order to] be bound by any judgment." Id. citing Cunha v. Avis Budget Car Rental, LLC, 2016 WL 6304432, at *2 (D. Mass. Oct. 26, 2016). Because individuals who do not opt in to an FLSA lawsuit may bring their own separate suits, FLSA collective actions do not implicate the same due process concerns as do Rule 23 actions. Id. citing O'Connor v. Oakhurst Dairy, 2015 WL 2452678, at *4 (D. Me. May 22, 2015) ("The due process safeguards built into Rule 23 class actions are not necessary in the FLSA collective action context.").

### B. The Settlement Is Fair and Reasonable and Should be Approved

Courts approve FLSA settlements that are reached as a result of contested litigation to resolve bona fide disputes. See Lauture at *1 citing Curtis v. Scholarship Storage Inc., 2016 WL 3072247, at *2 (D. Me. May 31, 2016) (citations omitted); Singleton v. AT&T Mobility Servs.,

9

LLC, 146 F. Supp. 3d 258, 261 (D. Mass. 2015); Scovil v. FedEx Ground Package Sys., Inc., 2014 WL 1057079, at *1 (D. Me. Mar. 14, 2014).

"The Court may approve a joint motion to approve the settlement of FLSA claims upon a finding that all parties to the action have agreed to it, and that it represents a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" Binienda v. Atwells Realty Corp., 2018 WL 6266784, at *1 (D.R.I. Nov. 30, 2018) citing Lynn's Food Stores, 679 F.2d at 1355.  This Court has previously held that "[w]hen determining whether a proposed settlement is fair and reasonable, courts must consider the totality of the circumstances including: the value of plaintiff's maximum and minimum possible recoveries, the extent to which the settlement will enable the parties to avoid the burdens of litigation, the seriousness of the litigation risks faced by both parties, and whether the agreement is the product of an arm's-length negotiation between experienced counsel." Id. citing Singleton v. AT&T Mobility Servs., LLC, 146 F. Supp. 3d 258, 260 (D. Mass. 2015).

In this matter, the settlement was reached following informal discovery and an arm's-length negotiation by experienced counsel in wage and hour cases.  Pushee Decl. ¶¶10-11; 32.

The settlement of $70,000.00 represents a significant percentage of the recovery that the Plaintiffs would have achieved had they prevailed in this lawsuit and survived an appeal.  Indeed, the Gross Settlement Amount represents significant portion of the Plaintiffs' calculated lost wages and Liquidated Damages.

This settlement is reasonable in light of the considerable risk that the Plaintiffs face. "Litigation inherently involves risks." In re PaineWebber Ltd. P'ships Litig., 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." In re Ira Haupt & Co., 304 F. Supp. 917, 934 (S.D.N.Y.

1969). Although the Plaintiffs believe their case is strong, it is subject to considerable risk as outlined above.

First, there was a risk that Plaintiffs would not succeed in maintaining the FLSA collective and/or certifying state law classes through trial. Although the Plaintiffs disagree, the Defendants would likely argue that differences among its two (2) Rhode Island restaurants and the work performed by Tipped Workers varied from person-to-person or restaurant-to-restaurant, and that such differences would preclude class or collective certification.

Second, a trial on the merits would involve significant risks for the Plaintiffs on liability issues for their side and closing work claims under the FLSA. Moreover, the U.S. Department of Labor ("DOL") issued an opinion letter, in November, 2018, purporting to eliminate the 20% threshold used to determine whether a worker is entitled to the full minimum wage under the FLSA for the performance of non-tipped work. The Plaintiffs strongly dispute whether this letter, which represents an abrupt and arbitrary shift in the DOL's longstanding position, will have any impact on this Court's analysis of their claims. The Defendants, on the other hand, contend that this letter is a reasonable position regarding "dual job" and "80/20" issues and is entitled to deference by this Court. Courts that have analyzed the impact of the DOL opinion letter have been split on its applicability. See Kafka v. Melting Pot Restaurants, Inc., 2019 WL 9465820, at *4 (W.D. Mo. Apr. 30, 2019)(declining to rely on the 2018 DOL Opinion Letter); Cope v. Let's Eat Out Inc, 354 F.Supp.3d 976 (W.D. Mo. 2019) (the 2018 Opinion Letter "is currently unworthy of deference"); compare Shaffer v. Perry's Restaurants, Ltd., 2019 WL 2098116, at *1 (W.D. Tex. Apr. 24, 2019(accepting the revised DOL rule under the November 8, 2018 Opinion Letter).

Third, a trial on the merits would involve significant risks for the Plaintiffs as to damages. The Plaintiffs would have to establish the total amount of time Tipped Workers spent more than 20% of

their shift performing side/closing work, which is a complicated analysis even with the benefit of Defendants' restaurant-level time records.

The proposed allocation of the settlement is also reasonable. It reflects a proportion of damages owed to the Plaintiffs based on the number of hours they worked for the Defendants for which the Defendants took the tip credit, which is a reasonable approximation of each Plaintiff's damages. Settlement Agreement, ¶ 3.4(D) (allocation plan); see, e.g., Soto v. Wings 'R Us Romeoville, Inc., No. 15 Civ. 10127, 2018 WL 1875296, at *1 (N.D. Ill. Apr. 16, 2018) (approving a collective action minimum wage settlement agreement with an allocation formula based on the number of hours the collective members worked and had a tip credit taken from their wages); Knox, 2017 WL 3834929, at * 1 (approving a collective action minimum wage settlement agreement with an allocation formula based on the number of hours the collective members worked and had a tip credit taken from their wages).

The Court should also approve the proposed Settlement Notice. See Ex. 1 (Settlement Agreement), Ex. 2 (Settlement Notice). "In an FLSA collective action, the Court has discretion in helping to facilitate notice to potential group members." See Romero v. Clean Harbors Surface Rentals USA, Inc., 368 F. Supp. 3d 152, 163 (D. Mass.), opinion clarified, 404 F. Supp. 3d 529 (D. Mass. 2019)(citations omitted). The proposed Settlement Notice is reasonable and sufficiently informs the Plaintiffs of the allocation formula, the requirement that they must cash the accompanying Settlement Check to opt in to the lawsuit and participate in the settlement, the consequences of non-participation, the monetary amount to which they are entitled under the Settlement Agreement, the scope and mechanism of the release of claims, the request for attorneys' fees and costs, and other terms of the Settlement Agreement. Nat'l Ass'n of Deaf v. Massachusetts Inst. of Tech., 2020 WL

1495903, at *4 (D. Mass. Mar. 27, 2020)(finding that "the hallmark of the notice inquiry…is reasonableness) citing Lucas v. Kmart Corp., 234 F.R.D. 688, 696 (D. Colo. 2006).

### C. The Incentive Award Should be Approved as Fair and Reasonable

The Named Plaintiff requests approval of an Incentive Award for her service to the settlement collective in this litigation. The Incentive Award recognizes the time and effort expended in furtherance of this litigation and settlement, including counsel's pre-suit investigation and assistance with the collective claims and review of documents after the class action was filed. Pushee Decl. ¶ 29.

"Incentive awards serve to promote class action settlements by encouraging named plaintiffs to participate actively in the litigation in exchange for reimbursement for their pursuits on behalf of the class overall." Bezdek v. Vibram USA Inc., 79 F. Supp. 3d 324, 352 (D. Mass.), aff'd, 809 F.3d 78 (1st Cir. 2015). "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." Id. (citations omitted). In this matter, the Named Plaintiff participated in the investigation leading up to the filing of the Complaint, discussed the motion to dismiss with counsel, reviewed the wage/hour data provided by the Defendants and discussed same with counsel, and communicated with counsel regarding the settlement negotiations. In addition, the Incentive Award, in the amount of $5,000.00, is a reasonable amount. Bettencourt v. Jeanne D'Arc Credit Union, No. 17-CV-12548-NMG, 2020 WL 3316223, at *1 (D. Mass. June 17, 2020)(approving class representative award of $10,000.00); In re Puerto Rican Cabotage Antitrust Litig., 815 F. Supp. 2d 448, 469 (D.P.R. 2011)(approving $8,000.00 incentive award for representatives who supplied documents and reviewed court filings, but were not required to engage in discovery, including depositions).

### D. The Court Should Approve Plaintiff's Attorney's Fees and Costs as Fair and Reasonable.

The Plaintiff's request for attorney's fees and costs is reasonable. Binienda v. Atwells Realty Corp., 2018 WL 6266784, at *1 (D.R.I. Nov. 30, 2018)("where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award). In this matter, *the attorney's fees and costs are not part of the common fund and were negotiated separately*.

Courts in the First Circuit recognize two (2) general methods for awarding attorney's fees in class/collective actions: (1) the "percentage of fund" method; and (2) the "lodestar" method. Curtis v. Scholarship Storage Inc., No. 2:14-CV-303-NT, 2016 WL 3072247, at *3–4 (D. Me. May 31, 2016). The percentage-of-the-fund method promotes early resolution of cases and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation to increase their billable hours. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 121 (2d Cir. 2005) (explaining that the percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation"). The percentage-of-the fund method is consistent with, and is intended to mirror, the private marketplace for negotiated contingent fee arrangements. Kirchoff v. Flynn, 786 F. 2d 320, 324 (7th Cir. 1986) ("When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee *is* the 'market rate.'").

In this matter, the Plaintiffs' Counsel undertook the representation on a purely contingent basis. The Plaintiffs' Counsel executed a fee arrangement with the Named Plaintiff that entitled Plaintiffs' Counsel to one-third (33.33%) of any recovery. Pushee Decl. ¶ 20. The Plaintiffs' Counsel was able to negotiate a higher amount for payment of attorney's fees in the amount of $25,000.00, which represents 35.71% of the Gross Settlement Amount. Id. at ¶ 20.

14

Court have regularly found that fee requests between 33-40% of a common fund or settlement amount is reasonable. Figueroa v. Advantage Opco, LLC, 2017 WL 11220380, at *1 (S.D. Fla. Jan. 26, 2017), report and recommendation adopted, 2017 WL 11220355 (S.D. Fla. Feb. 13, 2017)(holding that several FLSA collective action cases have approved as reasonable fee awards ranging from 1/3 to 40% of the settlement amount); Prena v. BMO Fin. Corp., , 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015)(finding that 33-40% contingency fee is typically charged in FLSA cases); Lowery v. City of Albuquerque, 2013 WL 1010384, at *44 (D.N.M. Feb. 27, 2013)(citing cases approving fees in an FLSA collective action of 38.5% of the total settlement plus litigation costs); Galt v. Eagleville Hosp., 310 F. Supp. 3d 483, 497 (E.D. Pa. 2018)(approving requested fee award of 35% of the common fund).

Furthermore, the Plaintiffs' Counsel's request for attorney's fees and additional costs and litigation expenses are separate and apart from the common fund and do not affect the Net Settlement Award to each Plaintiff. Pushee Decl. ¶ 13.

Moreover, the lodestar "cross-check" further supports approval of the $25,000.00 fee award. See Wal-Mart Stores, Inc., 396 F.3d at 123 ("As a 'cross-check' to a percentage award, courts in this Circuit use the lodestar method."); Goldberger v. Integrated Res., Inc., 209 F.3d 43, 50 (2d Cir. 2000) ("[W]e encourage the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage."). As part of the cross-check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate. Wal-Mart Stores, Inc., 396 F.3d at 121. In calculating the lodestar for cross-check purposes, "the hours documented by counsel need not be exhaustively scrutinized by the district court." Goldberger, 209 F.3d at 50. Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." Id.

In this matter, the Plaintiffs' Counsel's spent 87.65 hours litigating and settling this matter. Pushee Decl. ¶ 22. The hourly rates of the attorneys performing legal services range from $300.00/hour to $400.00/hour. Id. The lodestar calculation amount exceeds $27,000.00 and thus is more than the requested fee award of $25,000.00. Id. at ¶ 27.

### E. The Court Should Also Approve Payment of Plaintiffs' Counsel's Expenses.

Finally, the Plaintiffs' Counsel's request for reimbursement of $737.15 in out-of-pocket expenses to be paid *separately* from the Gross Settlement Amount is reasonable and should be approved. Id. at ¶¶ 13; 37. Attorneys in FLSA collective actions may recover "costs of the action." See 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and *costs of the action*.")(emphasis added); see also Binienda at *1. In this matter, the Plaintiffs' Counsel's actual expenses of $737.15 were incidental and necessary to the representation of the collective. Id. at ¶¶ 37-38. These expenses include the court filing fee, service of process, electronic research, and photocopies. Id. at ¶ 37.

### V. CONCLUSION

For the reasons set forth above, the Plaintiffs respectfully request that the Court: (1) approve as fair and adequate the settlement set forth in the Settlement Agreement; (2) certify for settlement purposes the Settlement Class; (3) approve the Incentive Award for the Named Plaintiff; (4) approve the appointment of Formisano & Co., P.C. as Settlement Class Counsel; (5) approve payment of attorneys' fees plus reimbursement of reasonable costs and expenses of $25,737.15; (6) approve the form, content and method of distribution of the Notice; (7) approve the fees and costs of Rust Consulting, Inc., the third-party Settlement Administrator; and, (8) incorporate the other terms of the Settlement Agreement.

                                        PLAINTIFF,
                                        on behalf of herself and all others similarly situated,
                                        By her attorneys,
                                        FORMISANO & COMPANY, P.C.

                                        /s/ V. Edward Formisano
Dated: November 13, 2020           /s/ Michael D. Pushee
                                        V. Edward Formisano (#5512)
                                        Michael D. Pushee (#6948)
                                        100 Midway Place, Suite 1
                                        Cranston, RI 02920-5707
                                        (401) 944-9691
                                        (401) 944-9695 (facsimile)

## **CERTIFICATION**

      I hereby certify that the within document has been electronically filed with the Court on this 13th day of November, 2020 and is available for viewing and downloading from the ECF system.

                                        /s/ Michael D. Pushee